IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STEVEN ROBERT LISSE,

    Debtor-Appellant,

v.

HSBC BANK USA, NATIONAL ASSOCIATION
FOR THE BENEFIT OF ACE SECURITIES CORP.
HOME EQUITY LOAN TRUST, SERIES 2006-NC3,
ASSET BACKED PASS-THROUGH CERTIFICATES,

    Creditor-Appellee.

OPINION AND ORDER

16-cv-617-wmc

Following my issuance of an order to show cause why Attorney Nora "should not be sanctioned for her frivolous, or at best vexatious, appeal" (Jan. 22, 2018 Order (dkt. #49) 1), Nora interposed a number of procedural and substantive objections, including challenges to the court's authority, adequacy of notice, and my claimed bias, as well as requested a formal hearing.[1] Following additional and supplemental notice (Jan. 30, 2018 Order (dkt. #51); Suppl. Not. (dkt. #66)), Chief Judge James Peterson, Chief Bankruptcy Judge Catherine Furay and I held a hearing on February 23, 2018, accepting Attorney Nora's voluminous responsive filings and allowing her and the attorneys she retained to represent her, John William Verant and John Remington Graham (who appeared telephonically), ample opportunity to present their arguments and additional facts orally. After then taking under advisement the question of whether to sanction Nora, including "barring her from appearing in any new matter before the courts of this district" (Jan. 22, 2018 Order (dkt. #49) at 1-2), the court now issues this opinion imposing a $2,500 fine

---

[1] (*See generally*, Mot. Vacate (dkt. #50); Mot. Change Case Caption (dkt. #52); Mot. Quash (dkt. #59); Rejoinder (dkt. #67).)

and a six-month suspension from appearing in any new matter in the District or Bankruptcy Courts of the Western District of Wisconsin, but will hold both sanctions in abeyance absent a further frivolous or vexatious filing.

Judges Peterson and Furay join in this opinion. Because decisions about admission to practice in this court are generally within the purview of the chief judge, Judge Peterson will issue a separate order effectuating this opinion.

OPINION

The order to show cause originated out of Attorney Nora's filings in this appeal on behalf of Steven Lisse and the related appeal of Lisse's wife, from the denial of their respective bankruptcy petitions. As set forth in detail in the additional and supplemental notices, however, this order has much deeper roots given Nora's many frivolous and vexatious filings and numerous requests for inordinately long extensions before all judges of this court over the last eight years.[2] The court first addresses the meritless due process

---

[2] The first order providing additional notice to Nora about the bases for the order to show cause informed her that
> The court again emphasizes, as it did in its OTSC, the reason for requesting a response did not relate solely to actions in the above-captioned lawsuit, but also to:
> 1. conduct cited previously by Judges Peterson, Crabb and Furay in Case Nos. 17-cv-206-jdp, 17-cv-207-jdp, 17-cv-208-jdp, 16-bk-12556-cjf, 10-cv-68-bbc; and
> 2. her dilatory tactics generally in some of these and other cases, including her repeated requests for clarifications and stays (e.g., requests for inordinately long extensions in light of personal health or disability issues, soon belied by the filing of other copious motions and briefing).

(Jan. 30, 2018 Order (dkt. #51) 2.) As discussed below, the supplemental notice provided far greater detail as to this court's and the bankruptcy court's specific findings against Nora, now dating back to 2010. (*See* Suppl. Not. (dkt. #66).)

2

concerns Nora raised, before turning to the substance of her response to the order to show cause and an appropriate sanction.

## I. Due Process Concerns

In her initial response to the order to show cause, Attorney Nora moved to vacate the order to show cause or to clarify the charges and charging authority. (Mot. Vacate (dkt. #50).) In her further written submissions and again at the formal hearing, Attorney Nora and her counsel raised several due process concerns to the show cause order, including that: (1) this court lacks the legal authority to sanction her; (2) she has not been given sufficient notice of the charges; and (3) as the judge issuing the order to show cause, I cannot fairly participate.

In this case, I granted defendant's motion to dismiss with prejudice and awarded statutory costs, as well as issued the order to show cause. (Jan. 22, 2018 Order (Dkt. #49).) Despite noting that she "ha[d] more than ample notice of the basis for [the order to show cause]," I twice provided additional detail, initially by order dated January 30 (Order (dkt. #51)), and again with a supplemental notice of the basis of that order on February 15, 2018 (Suppl. Not. (dkt. #66)), which identified roughly a dozen cases since 2010 in which Attorney Nora appeared and this court entered adverse findings regarding her frivolous and vexatious filings, and raised concerns about repeated requests for lengthy extensions that needlessly prolonged the proceedings. (*See generally*, Suppl. Not. (dkt. #66).) Nevertheless, Attorney Nora and her counsel continued to argue that these statements failed "to specify the charges against Nora as constitutionally required in lawyer discipline cases" because "[t]he standard is that [of] an accused in a criminal case," such

3

that each count must "be charged in language of ultimate fact . . . including reference to the statute, rule, or regulation claimed to have been violated for each count." (Mot. Quash (dkt. #59) 2; *see also* Rejoinder (dkt. #67) 1-2.)

Because an attorney facing suspension or disbarment is plainly not entitled to *criminal* due process, this argument itself borders on the frivolous. *See Matter of Maurice*, 73 F.3d 124, 128 (7th Cir. 1995) (Fed. R. App. P. 46(b) "does not require a 'bill of particulars," but rather "an opportunity to show good cause . . . why the member should not be suspended or disbarred"). "Of course, a district court acting under § 1927 . . . may, in its sound discretion, impose sanctions *sua sponte* as long as it provides the attorney with notice regarding the sanctionable conduct and an opportunity to be heard." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). *See also* Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction . . . ."); N.D. Ill. L.R. 83_28 (permitting attorneys to be disciplined for misconduct following the issu[ance of] a statement of charges" and the filing of an answer by the attorney, as well as an evidentiary hearing if required).

Further, the contemplated sanction -- preventing Nora from filing new cases in this court -- is *not* disbarment, but rather a tool of docket management belonging to the court to prevent frivolous and vexatious filings. *See Jolly Grp.*, 435 F.3d at 720 ("[A] court has discretion to impose § 1927 sanctions when an attorney has acted in an 'objectively unreasonable manner' by engaging in 'serious and studied disregard for the orderly process of justice'; pursued a claim that is 'without a plausible legal or factual basis and lacking in

4

justification'; or 'pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.'" (second alteration in original) (internal citations omitted)); *see also* Fed. R. App. P. 46(c) ("A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule. First, however, the court must afford the attorney reasonable notice, an opportunity to show cause to the contrary, and, if requested, a hearing."). The bases for Nora's discipline were set forth in the court's specific rulings as to frivolous legal positions, vexatious maneuvers and unjustified delays *in this very case*, as well as similar rulings by this court in roughly a dozen other cases -- all laid out in a 13-page, supplemental notice of the basis for the order to show cause (Suppl. Not. (dkt. #66)). It is hard to fathom that Nora would be entitled to any further notice of the reasons why the court is contemplating restricting Nora's authorization to file cases in this court. Indeed, Nora ultimately appears to acknowledge that Rule 11, 28 U.S.C. § 1927, and the court's own inherent power to manage its docket, all provide ample authority for the court to act (Mot. Quash (dkt. #59) 4).

Nora contends, in the alternative, that "[i]n all proper lawyer discipline proceedings, the authority which frames the accusation may not also sit in judgment" (*id.* at 3; *see also* Rejoinder (dkt. #67) 2). Nora argues that "[t]he Wisconsin Supreme Court has independent prosecutors and proper rules for lawyer discipline proceedings, but this Court does not, hence these proceedings are unauthorized by law." (Mot. Quash (dkt. #59) 4.) Yet again, Nora overstates her due process rights, ignoring that courts across the country, including the Seventh Circuit and the district courts under it, have the authority

to discipline the lawyers and parties who come before them, as explained above. Yet Nora stressed that she could not get a fair hearing because the "complainants, witnesses, prosecutors and judges would be the same, contrary to rudimentary principles of due process of law." (Rejoinder (dkt. #67) 5-6.) At minimum, Attorney Nora argues that my issuance of an order to show cause "indicates that [I have] . . . already decided ultimate issues of fact and made conclusions of law without notice or opportunity for Attorney Nora to be heard." (Mot. Vacate (dkt. #50) ¶ 2.)

Of course, any order to show cause arising out of conduct before a court would be subject to similar criticism, yet this does not preclude courts from proceeding to manage their dockets and discipline counsel. To further assuage her concern, however, this court determined that Nora's "response to the OTSC [would] be considered by three active judges of this court, with Chief Judge Peterson presiding" at the in-person hearing before a panel comprised of Judges Peterson, Conley and Furay. (Jan. 30, 2018 Order (dkt. #51) 3.)[3]

---

[3] As noted at the hearing itself, Judge Peterson was selected to preside over the panel since, in his position as Chief, he is charged with responsibility to govern the admission of attorneys to practice before this court. *See* W.D. Wis. L.R. 1. Although Nora raised no objection to Judge Peterson's participation, she did object that Judge Furay could not sit on the panel because she "is not a judge of this Court under the judiciary article of the United States Constitution." (Rejoinder (dkt. #67) 2-3; *see also* Mot. Quash (dkt. #59) 3-4.) While not Article III judges, U.S. Bankruptcy Judges *are* "judicial officers of the United States district court" under Article I. 28 U.S.C. § 152. Moreover, Judge Furay was placed on the panel in a good-faith attempt to bend over backwards to accommodate and assuage Nora's concerns about a lack of impartiality. Further, the Seventh Circuit has recognized a bankruptcy court's authority to impose sanctions under § 1927 or under 11 U.S.C. § 105(a). *See Adair v. Sherman*, 230 F.3d 890, 895 n.8 (7th Cir. 2000); *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997). Finally, as set forth in the supplemental notice, Attorney Nora's problematic filings have generally originated in the bankruptcy court, so Judge Furay's participation seemed especially appropriate.

The court is satisfied that it has authority to act and has provided Nora sufficient due process, so respondent's motion to quash (dkt. #59) will be denied.[4]

## II. Substantive Concerns

At the order to show cause hearing itself, the court acknowledged receipt of and accepted evidentiary proffers from Attorneys Pressel, Lewis, Peterson and Nora, as well as Nora's former office manager Nowlen. (*See* Pressel Decl. (dkt. #71); Lewis Decl. (dkt. #79); Peterson Decl. (dkt. #81); Verified Conditional Offer of Proof (dkt. #74); Nowlen Decl. (dkt. #73).) After discussion of the due process issues addressed above, the panel and Attorney Nora then engaged in a lengthy discussion regarding the court's specific concerns, the substance of which is addressed below.

At the hearing, Attorney Nora's counsel suggested that it would have to call many witnesses to refute the court's previous rulings against Nora. Attorney Nora also argued in writing and to some extent at the hearing, that she "has been obliged to articulate [o]n behalf of her clients and herself facts and circumstances which are disagreeable, but true and provable, and she has suffered judicial displeasure." (Rejoinder (dkt. #67) 5.) Unfortunately, the nobility of that defense is belied by the frivolous nature of her actual submissions to the court over time, as well as in this case. (*See* Suppl. Not. (dkt. #66).) Her defense of her actions in previous cases is wholly unsatisfying because in many of the previous cases, Nora chose not to appeal, and when she did, her appellate arguments were

---

[4] Attorney Nora's request that these proceedings be separated from the bankruptcy appeal in *Lisse* (dkt. #52) will also be denied.

7

also deemed frivolous. *See, e.g., PNC Bank v. Spencer*, 763 F.3d 650, 654-55 (7th Cir. 2014). The court concludes that the time to litigate the court's previous rulings is long past.

The discussion at the hearing focused on the case at hand, which illustrates three of Nora's recurring, vexatious litigation strategies: (1) inappropriately pursuing relief in federal court; (2) dilatory litigation conduct, including numerous, last-minute requests for lengthy extensions; and (3) filing multiple cases or appeals then failing to consolidate or join them. As underscored at the hearing, Nora has repeatedly failed to acknowledge that federal courts are courts of limited jurisdiction and that generally speaking the *only* federal court with the authority to review civil decisions of state courts is the United States Supreme Court.

In this case, a *state* court had already determined that the underlying mortgage note held by creditor-appellee HSBC was the original note. (*See In re Lisse*, No. 16-bk-12556-cjf (Bankr. W.D. Wis.) dkt. #47 at 28-32.) Yet instead of returning to the state court, where the Lisses had first raised the claim of fraud, or even trying to revisit the question of fraud in the bankruptcy court, Nora filed multiple notices of appeal in this court and tried to present "newly-discovered" evidence of fraud in the district court through introduction of an expert opinion. (*See* Wickstrom Aff. (dkt. #3-2).) Moreover, while the substance of the appeal in Mr. Lisse's case was never briefed, his bankruptcy appeal concerned the same fundamental issue as his wife's mirror-image appeals, in which Chief Judge Peterson determined "[t]he Note's authenticity was already decided in Lisse's foreclosure action in state court, so the doctrine of issue preclusion barred Lisse from litigating the same issues again." *Lisse v. Select Portfolio Servicing, Inc.*, Nos. 17-cv-206-jdp, 17-cv-207-jdp, 17-cv-208-

jdp, 2017 U.S. Dist. LEXIS 200196, at *3 (W.D. Wis. Dec. 5, 2017).[5]

Regarding the court's concerns about repeated requests for extensions, Attorney Nora was more accepting of criticism and seemingly contrite. As to her pattern of seeking extensions at the -- or on the eve of a -- filing deadline, often accompanied by invocations of ill health, or as in *Lisse*, a doctor's note prescribing a complete break from the practice of law (*see e.g.*, Sept. 21, 2017 Order (dkt. #42) 2-3), Nora argued that her requests were more often for *de minimis* amounts of time (*see* Verified Conditional Offer of Proof (dkt. #74) 12, 15-16), further suggesting at the hearing that she only requested extensions at the last minute when it became apparent that she would not be able to meet deadlines. In response to the court's concern that her caseload may simply be too heavy, Nora offered that she affirmatively implemented a system to better manage her cases. *See* Wis. SCR 20:1.3 cmt. 2 (requiring an attorney's workload remain "controlled so that each matter can be handled competently"). Finally, as to the court's concern about a dilatory motive,

---

[5] At the hearing, Attorney Nora argued that she had actually filed Expert Wickstrom's affidavit opinion to alert the court about fraud, so it could be investigated and prosecuted under 18 U.S.C. § 4, but her client was plainly in the wrong court, making the wrong argument, and it is very hard to attribute her conduct to obtuseness as opposed to making a last-ditch effort to keep her clients' in their home years after they first defaulted on the underlying loan. At some point, Attorney Nora needs to recognize the difference between zealous advocacy and abuse of process, even if her clients do not, indeed, especially if they do not.

Attorney Nora insisted that delay was never her intent or purpose.[6]

Ultimately, Attorney Nora did acknowledge looking at some of her filings and recognizing deficiencies, which she purported to attribute to a "mild traumatic brain injury." Nora explained that she had notified her clients about her inability to practice as a result, but acknowledged that she continued to make some filings during her extended medical leave. Attorney Nora would do well to remember that an attorney "shall not represent a client or . . . shall withdraw from the representation" where "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." Wis. SCR 20:1.16(a)(2). The court recognizes that hindsight allows for reflection and improvement, but the sheer number and kind of "the dog ate my homework" excuses that Nora has offered undermine her credibility and, importantly, mean that she will no longer get the benefit of the doubt from this court.

The Lisses' cases also provide an example of Attorney Nora's duplicative, vexatious filings. Steven Lisse appealed the dismissal of his bankruptcy case in September 2016 (*see* Notice of Appeal (dkt. #1); Bankruptcy Court Order (dkt. #1-1)); Sondra Lisse took three separate appeals from decisions of the bankruptcy court in her related bankruptcy case (*see*

---

[6] Nora also pointed out that she should not be held responsible for the delay caused by her clients' previous attorneys. (*See* Rejoinder (dkt. #67) 4.) While this court never intended to punish and will not sanction her for the misconduct of others, she needs to appreciate that unnecessary *additional* delays attributable to *her* conduct exacerbate unreasonable delays already strung out by her clients and their previous counsel, sometimes for years, and that she *is* responsible for that. Nora also argues that she cannot be responsible for criticisms contained in orders in *Martinson* and *Mueller* because she had withdrawn as counsel before their issuance. (*See* Verified Conditional Offer of Proof (dkt. #74) 30-32.) Again, Nora cannot and will not be held accountable for delays occurring after her withdrawal of representation, but in *Martinson*, Nora was counsel in the first bankruptcy, and in *Mueller*, Nora requested -- and subsequently filed -- an amicus brief, contributing to needless delay in what proved to be a meritless appeal.
...
10

May 11, 2017 Order (17-cv-206 dkt. #5) 1 (identifying case numbers 17-cv-206, 17-cv-207 and 17-cv-208 as filed by Ms. Lisse).)[7] While Attorney Nora alerted Judge Peterson of Ms. Lisse's three pending appeals (*see* Mot. Extension of Time (17-cv-206 dkt. #4) 1), she did not inform the court about her simultaneous representation of Mr. Lisse in his appeal, which concerned "the same fundamental issue" and was proceeding before me. (Amend. Mot. Stay (dkt. #45) ¶ 10.) At the hearing, Nora acknowledged that this was a mistake.

As all members of the panel agreed during the hearing, no one questions Attorney Nora's passion for the law or her commitment to her clients. Even so, she is still duty-bound to conduct herself ethically and with candor to the court, which means that she must present arguments that are warranted by existing law, or with non-frivolous arguments for the extension, modification, or reversal of existing law. As the court has noted on numerous occasions, and as it especially emphasizes in this opinion, Nora's advocacy has crossed the line of professional conduct too many times to be tolerated or ignored any longer. Accordingly, she will be fined $2,500 and suspended from the bar of the Western District of Wisconsin for six months. This sanction is, however, stayed unless and until Attorney Nora submits a further sanctionable filing to this court.

---

[7] At the hearing, Attorney Nora explained that the Lisses filed separate bankruptcy cases because Ms. Lisse initially did not want to file bankruptcy for fear of her work colleagues finding out, but later became amenable to filing, a less than convincing explanation since Mr. Lisse had already raised the relevant issues, and even if not, she could have *joined* in that proceeding.

11

ORDER

IT IS ORDERED that:

1) Attorney Nora's motion to quash (dkt. #59) is DENIED.

2) The request to give the order to show cause proceedings a separate case number (dkt. #52) is DENIED.

3) As a sanction for frivolous and vexatious litigation, Attorney Nora is FINED $2,500 AND SUSPENDED from the Western District of Wisconsin bar for a period of six months, these penalties are stayed unless she submits a further sanctionable filing.

Entered this 20th day of March, 2018.

BY THE COURT:

_____
WILLIAM M. CONLEY
District Judge